UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LANCE REBERGER,<br><br>    Plaintiff<br><br>v.<br><br>JAMES DZURENDA, et al.,<br><br>    Defendants | Case No.: 3:17-cv-00552-RCJ-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 111 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for summary judgment. (ECF No. 111.) Defendants Tony Slonim and Carol Meyer filed a response indicating only that the motion does not appear to be directed toward them, and the court agrees with this. (ECF No. 112.) The remaining Defendants filed a response. (ECF No. 113, 113-1 to 113-5, 115-1.) Plaintiff filed a reply. (ECF No. 117.)

After a thorough review, it is recommended that Plaintiff's motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act (RA). (Compl., ECF No. 15.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC), High Desert State Prison (HDSP), Northern Nevada Correctional Center (NNCC), and Ely State

Prison (ESP). (*Id.*) Defendants are: Dr. Aranas, Q. Byrne, Cegavske, Deal, Dzurenda, Gittere, Flores, Laxalt, Meyer, Nash, Sandoval and Slonim.

The court screened Plaintiff's complaint. (ECF No. 14.) First, the court allowed Plaintiff to proceed with claims for violation of Title II of the ADA and § 504 of the RA against Dzurenda, Aranas, Deal, Filson, Gittere, H. Byrne, Q. Byrne, Flores, Sandoval, Laxalt and Cegavske.[1] These claims are based on Plaintiff's allegations that he has a disability— human immunodeficiency virus (HIV)—and he was discriminated against because of his disability when, pursuant to NDOC's Administrative Regulation (AR) 610, he was placed in administrative segregation for over 12 years, where he was on lock down for 23 hours a day, seven days a week and deprived of NDOC's programs, services and benefits.

Second, the court allowed Plaintiff to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Dzurenda, Dr. Aranas, Slonim and Meyer. This claim is based on allegations that these Defendants denied him his HIV medications on several occasions due to a contract NDOC has with Renown employees Slonim and Meyer. Under this contract, the prison's medical department can only order Plaintiff's HIV medications seven days prior to the medications running out, which is not enough time for the prison to refill his prescription.

Third, Plaintiff was allowed to proceed with an Eighth Amendment conditions of confinement claim against Nash based on allegations that during his more than 12 years in administrative segregation at NNCC, ESP and HDSP, the water had high levels of lead and sulfur that was not safe to consume.

---

[1] H. Byrne and Filson were subsequently dismissed without prejudice under Federal Rule of Civil Procedure 4(m) for lack of timely service. (ECF No. 100.)

Finally, Plaintiff was allowed to proceed with a due process claim against defendants Dzurenda, Dr. Aranas, Deal, Sandoval, Cegavske and Laxalt, based on allegations that the more than 12 years he spent in administrative segregation constituted an atypical and significant hardship.

Plaintiff moves for summary judgment, arguing that the time he spent in administrative segregation violated Title II of the ADA and § 504 of the RA.[2]

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

---

[2] Plaintiff's motion does not mention his Eighth Amendment deliberate indifference to serious medical needs and conditions of confinement claim or his due process claim.

3

U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

   In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

   If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

Plaintiff was initially placed in administrative segregation beginning on April 15, 2005, while there was an investigation pending into alleged sexual misconduct with his cellmate. (ECF No. 115-1 at 7.) Plaintiff was found guilty of the charges, and was sanctioned to 60 days in disciplinary segregation for each of the two offenses. The first 60-day sanction began on May 12, 2005, and ended on July 10, 2005, and the second 60-day sanction began on July 10, 2005, and ended on September 7, 2005. Plaintiff was advised that he would remain in administrative segregation following the expiration of his disciplinary sanctions pursuant to AR 610. (*Id*. at 8.) Plaintiff remained in administrative segregation until 2018. (*Id*. at 8-25.)[3]

AR 610, effective November 1, 2004, provided in pertinent part:

> 1.2   It is the policy of the Department to segregate inmates who test positive for HIV antibodies if they engage in high risk behavior which tends to promote the spread of the disease, as defined in NRS 209.385.4.B.

---

[3] Plaintiff was cleared off of AR 610 status on February 7, 2018. (ECF No. 115-1 at 25.)

>    1.2.1.  The Department will enforce this policy for the welfare of the general inmate population, for the welfare of staff, and to reduce the opportunities for the disease to spread.
>
>    …
>
>    1.4.2.3  In all cases of inmate disciplinary action where there is some evidence that the offender engaged in behavior that increases the risk of transmitting the virus, such as battery, sexual activity, illegal intravenous injection of a controlled substance or dangerous drug, or receiving or giving tattoos, the inmate will be moved to a segregation unit and housed in a single occupancy cell.
>
>    When the disciplinary sanction, if any, expires, the inmate will remain segregated under the conditions of Administrative Segregation.
>
>    The Medical Director and the Offender Management Administrator (OMA) must approve any classification decision that recommends release from segregation.

(ECF No. 111 at 13, 16; ECF No. 113-1 at 3-4, 6.) The versions of AR 610 effective September 1, 2006 and June 17, 2012, and May 19, 2015, contain substantially similar language. (ECF No. 111 at 21, 23, 27, 29, 34.)

**B. ADA & § 504 of the RA**

Both the ADA and § 504 of the RA apply in the prison context. *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted) (affirming that state prisons qualify as a "public entity" under Title II of the ADA); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (applying the ADA and RA to prisoner's claims). The ADA applies to public entities, while the RA applies to all federally funded programs. 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

Thus, a claim under Title II of the ADA requires that a plaintiff establish:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefit of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn*, 502 F.3d at 1060 (internal quotation marks and citation omitted).

The RA provides in relevant part: "No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

Therefore, a claim under the RA requires the plaintiff to establish: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefits; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *O'Guinn*, 502 F.3d at 1060 (internal quotation marks and citation omitted).

**C. Analysis**

It is undisputed that Plaintiff has HIV, and that HIV constitutes a disability under the ADA and RA. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Gates v. Rowland,* 39 F.3d 1439, 1446 (9th Cir. 1994).

7

1       Plaintiff asserts that he was discriminated against when he was placed in segregation for nearly 13 years because of his HIV status, and during that time was denied the opportunity to participate in NDOC's services, programs or activities.

        Defendants do not dispute that Plaintiff was held in administrative segregation from June 2005 through April 2018. They dispute, however, that the basis of his placement in segregation was solely *because of* his HIV status. They provide evidence that he was convicted of a sexual offense that increased the risk of transmitting the virus. As a result, he was placed in disciplinary segregation and when that sanction expired, in administrative segregation under AR 610. They argue that it was the risky behavior and not his HIV status itself that resulted in his confinement in segregated housing. (ECF No. 115-1 at 7-8.) In other words, if he had not been convicted of engaging in the risky behavior, he would not have been confined to administrative segregation. In addition, they provide evidence that there were other reasons for his continued confinement in administrative segregation, including that he chose to remain in administrative segregation, and he refused to have a cellmate while at ESP. (*See* ECF No. 115-1 at 21-25.)

        In his reply, Plaintiff disputes that he chose to remain in segregation or that he refused to have a cellmate. Instead, he argues that under NDOC's policy, he had to have a cellmate that also had HIV, and there was not another person who could be his cellmate at ESP.

        Defendants have produced evidence sufficient to create a genuine dispute of material fact as to whether Plaintiff remained confined in administrative segregation solely because of his HIV status. Therefore, Plaintiff's motion for summary judgment as to the ADA and RA claims should be denied. As a result, the court need not reach Defendants' other arguments.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for summary judgment as to the ADA and RA claims (ECF No. 111).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 17, 2022

_____
Craig S. Denney
United States Magistrate Judge