# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LANCE REBERGER, | Case No.: 3:17-cv-00552-RCJ-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 120 |
| JAMES DZURENDA, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is the motion for summary judgment filed by defendants Dr. Romeo Aranas, Quentin Bryne, Barbara Cegavske, Dwayne Deal, James Dzurenda, Nancy Flores, William Gittere, Adam Paul Laxalt, Jennifer Nash and Brian Sandoval (collectively, the NDOC Defendants). (ECF Nos. 120, 120-1 to 120-13.) Plaintiff filed a response. (ECF No. 132.) The NDOC Defendants filed a reply. (ECF No. 137.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and section 504 of the Rehabilitation Act (RA). (Compl., ECF No. 15.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC), High Desert State Prison (HDSP), Northern Nevada Correctional Center (NNCC), and

1 Ely State Prison (ESP). (*Id.*) Defendants are: Dr. Aranas, Q. Byrne, Cegavske, Deal, Dzurenda,

2 Gittere, Flores, Laxalt, Meyer, Nash, Sandoval, and Slonim.

3        The court screened Plaintiff's complaint. (ECF No. 14.) First, the court allowed Plaintiff

4 to proceed with claims for violation of Title II of the ADA and section 504 of the RA against

5 Dzurenda, Dr. Aranas, Deal, Filson, Gittere, H. Byrne, Q. Byrne, Flores, Sandoval, Laxalt, and

6 Cegavske. H. Byrne and Filson were subsequently dismissed without prejudice under Federal

7 Rule of Civil Procedure 4(m). (ECF No. 100.) These claims are based on allegations that

8 Plaintiff has a disability—human immunodeficiency virus (HIV)—and he was discriminated

9 against because of his disability when, pursuant to NDOC's Administrative Regulation (AR)

10 610, he was placed in administrative segregation (ad-seg) for over 12 years, where he was on

11 lock down for 23 hours a day, seven days a week, and deprived of NDOC's programs, services

12 and benefits.

13        Second, the court allowed Plaintiff to proceed with an Eighth Amendment deliberate

14 indifference to serious medical needs claim against Dzurenda, Dr. Aranas, Slonim, and Meyer.

15 This claim is based on allegations that these Defendants denied him his HIV medications on

16 several occasions due to a contract NDOC has with Renown employees Slonim and Meyer.

17 Under this contract, Plaintiff claims the prison's medical department can only order Plaintiff's

18 HIV medications seven days prior to the medication running out, which is not enough time for

19 the prison to refill his prescription.[1]

20

21

22

23

[1] The court has issued a separate report and recommendation that summary judgment be granted in favor of Slonim and Meyer.

Third, Plaintiff was allowed to proceed with an Eighth Amendment conditions of confinement claim against Nash based on allegations that during his time in ad-seg at NNCC, ESP, and HDSP, the water had high levels of lead and sulfur that was not safe to consume.

Finally, Plaintiff was allowed to proceed with an Eighth Amendment claim against Dzurenda, Dr. Aranas, Deal, Sandoval, Cegavske, and Laxalt based on allegations that the more than 12 years he spent in ad-seg were a significant hardship that put Plaintiff in imminent danger of serious physical and psychological injuries.

Plaintiff's response mentions a due process claim; however, Plaintiff was not allowed to proceed with a due process claim on screening. Instead, the court construed his long-term segregation claim as falling under the Eighth Amendment.

The NDOC Defendants move for summary judgment, arguing: they did not violate the ADA or RA, they were not deliberately indifferent with respect to Plaintiff's serious medical needs or his conditions of confinement, and he did not exhaust administrative remedies as to the conditions of confinement claim concerning the water. Alternatively, they contend they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

1 judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

2 other hand, where reasonable minds could differ on the material facts at issue, summary

3 judgment is not appropriate. *Anderson*, 477 U.S. at 250.

4        "The purpose of summary judgment is to avoid unnecessary trials when there is no

5 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

6 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

7 of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

8 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

9 one party must prevail as a matter of law"). In considering a motion for summary judgment, all

10 reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

11 *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

12 *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

13 nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

14 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

15 determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

16 *Anderson*, 477 U.S. at 249.

17        In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

18 "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

19 come forward with evidence which would entitle it to a directed verdict if the evidence went

20 uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

21 the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

22 *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

23 omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. ADA &RA**

Both the ADA and section 504 of the RA apply in the prison context. *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted) (prisons qualify as a "public entity" under Title II of the ADA); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (applying the ADA and RA to the prisoner's claim). The ADA applies to public entities, while the RA applies to all federally funded programs. 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

Thus, a claim under Title II of the ADA requires that a plaintiff establish:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefit of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn*, 502 F.3d at 1060 (internal quotation marks and citation omitted).

The RA provides in relevant part: "No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

Therefore, a claim under the RA requires the plaintiff to establish: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefits; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *O'Guinn*, 502 F.3d at 1060 (internal quotation marks and citation omitted).

The NDOC Defendants acknowledge that Plaintiff was placed in ad-seg in 2005 and he was not removed from ad-seg until 2018. Defendants do not dispute that the ADA and RA apply in this context or that HIV qualifies as a disability under the ADA and RA. Nor do they dispute that Plaintiff was excluded from participation in or denied the benefit of the NDOC's services,

programs, or activities while he was in ad-seg. Instead, the NDOC Defendants contend that
Plaintiff was placed in ad-seg not solely because of his HIV, but because he was found to have
engaged in sexual misconduct against his cellmate. In addition, they argue that Plaintiff
subsequently declined opportunities to leave ad-seg because he refused to have a cellmate.

NDOC's AR 610, as it existed from November 1, 2004, through May 15, 2018, concerns
inmates with HIV and Acquired Immune Deficiency Syndrome (AIDS) within NDOC. It set
forth NDOC's policy to segregate inmates who test positive for HIV "if they engage in high-risk
behavior which tends to promote the spread of this disease, as defined in NRS 209.385.4.B." The
AR described "high-risk behavior" as including battery, sexual activity, illegal intravenous
injection of a controlled substance or dangerous drug, or receiving or giving of tattoos. (ECF No.
120-4 at 3, 6.) Where there was evidence of an HIV positive inmate engaging in such behavior,
the inmate was moved into a segregation unit and housed in a single occupancy cell. (*Id*. at 6.)
When the disciplinary sanction, if any, expired, the inmate was to remain in ad-seg. (*Id*.) The
medical director and offender management administrator were required to approve any
classification decision recommending release from segregation under AR 610. (*Id*. at 4, 6.)

The NDOC Defendants first contend that Plaintiff was not placed in ad-seg solely
because of his HIV status, but because he perpetrated an incident of sexual misconduct against
his then cellmate, relying on an April 15, 2005 entry in Plaintiff's Offender Information
Summary. The entry describes a report reflecting that the cellmate informed staff that Plaintiff
was masturbating in front of the cellmate while the cellmate was sleeping and then fondled the
cellmate when he was sleeping. Plaintiff was informed that if it was determined there was any
sexual activity, Plaintiff would be "placed on AR 610." (ECF No. 120-3 at 7.) Another entry

dated October 18, 2006, states that Plaintiff was found guilty of fondling his cellmate's groin area. (*Id*. at 10.)

A July 25, 2005 entry indicates that Plaintiff was sanctioned to two rounds of 60 days in disciplinary segregation for the different charges. The second 60-day sanction was set to expire on September 7, 2005. The entry noted that Plaintiff was subject to remain in ad-seg under AR 610. (ECF No. 120-3 at 8.) A month after his second 60-day disciplinary segregation sentence expired, Plaintiff sought review of his AR 610 ad-seg status. Plaintiff was told the committee would not recommend removal from AR 610 status at that time. (*Id*.) On December 1, 2005, it was recommended that Plaintiff be transferred to EP for long-term ad-seg under AR 610. (*Id*.)

On September 5, 2006, Plaintiff requested to be taken off of AR 610 ad-seg status. (*Id*.) On October 18, 2006, the classification committee agreed to submit a recommendation to the medical director that Plaintiff be released from AR 610 ad-seg status and that he be returned to his "p/s" or protective segregation status. (*Id*. at 10.) On April 23, 2007, six months after the classification committee made its recommendation, Plaintiff was notified that the Offender Management Division, known as "OMD," denied his request to be taken off of AR 610 status. (*Id*.) There is no indication why Plaintiff's request was denied.

Plaintiff was transferred temporarily to HDSP for court proceedings on August 28, 2007. (*Id*.) On March 3, 2008, Plaintiff again requested review of his AR 610 ad-seg status. (*Id*.) Plaintiff requested removal from AR 610 status when he appeared before the HDSP classification committee on July 11, 2008, and the committee recommended he remain in ad-seg under AR 610. (*Id*. at 11.) No reason was given for the recommendation. Plaintiff was transferred to LCC on December 4, 2008, and was placed into ad-seg. (*Id*.) On December 8, 2008, Plaintiff again requested a full classification review for release from AR 610 ad-seg status.

(*Id.*) On February 24, 2009, the classification committee recommended that Plaintiff be submitted for removal from AR 610 status, noting he had been disciplinary free for four years, and that the committee did not believe the criteria for AR 610 status had been met. (*Id.*)

Plaintiff was transferred back to HDSP for court, and remained on ad-seg status under AR 610. (*Id.* at 12.) When his court proceedings were completed, it was recommended he be transferred back to LCC in ad-seg. (*Id.* at 13.) An entry from November 16, 2011, noted that Dr. Reed denied his request to be removed from AR 610 ad-seg status. (*Id.*) Again, there is no reason given for the denial.

On January 24, 2012, Plaintiff requested review for removal of his AR 610 status. The Committee recommended he remain in ad-seg under AR 610, with no reason given for the recommendation. It was further recommended that he be transferred to ESP for long-term ad-seg under AR 610. (*Id.*) He arrived at ESP on April 3, 2012, for long-term ad-seg placement under AR 610. (*Id.*) He was transferred to NNCC for a medical treat and return, but remained on AR 610 ad-seg status. (*Id.* at 15.) On August 24, 2012, he was returned to ESP, and was still on AR 610 ad-seg status. (*Id.*)

On January 29, 2013, he requested removal of his AR 610 status. (*Id.* at 16.) The entries state that Plaintiff's AR 610 ad-seg status was under review. On May 15, 2014, Plaintiff saw the full classification committee about his AR 610 status. There is a notation that Dr. Bannister had previously approved Plaintiff's removal, and the committee agreed to recommend removal of Plaintiff's AR 610 status, and this would be submitted to the appropriate staff. (*Id.* at 18.) That recommendation was submitted to OMD and the entries indicate it was under review, and an email was sent to OMD on April 16, 2015, about the status of the recommendation. (*Id.* at 18-20.) As of August 25, 2015, there was no notice about a decision

1   from OMD on Plaintiff's request to remove his AR 610 status. (*Id*. at 21.) On that date, the entry
2   states that Plaintiff was housed in ad-seg due to his refusal to double cell and AR 610. (*Id*.) There
3   are similar entries during his monthly reviews following that, and entries in February through
4   May of 2016, state that Plaintiff said he would double cell but only at LCC. (*Id*. at 21-22) On
5   June 24, 2016, the entry reflects that Plaintiff no longer wished to double cell, and he was still in
6   ad-seg due to his refusal to double cell and AR 610. (*Id*.)

7        Entries from late 2016 and early 2017, state Plaintiff was in ad-seg due to his refusal to
8   participate in the double cell process "with others of his same situation." (*Id*. at 23.) An entry
9   from March 28, 2017, finally indicates that Plaintiff's request to be taken off AR 610 status
10  (from May 2014) had been denied. (*Id*. at 24.) The entries continue to reflect that Plaintiff was in
11  ad-seg due to his AR 610 status and because he was "not able to double cell." (*Id*. 24.) The
12  October 25, 2017 entry states Plaintiff again requested removal from AR 610 status, and was
13  advised his request would be reviewed. (*Id*. at 24-25.)

14       On February 7, 2018, Plaintiff was released from his AR 610 status. (*Id*. at 25.)

15       While the NDOC Defendants claim that Plaintiff was not placed in ad-seg status solely
16  because of the incident with his cellmate, Plaintiff raises several disputes concerning material
17  facts relevant to this issue. First, neither party provides the court with the actual disciplinary
18  hearing documentation describing the charges and what Plaintiff was found guilty of; however,
19  Plaintiff states that he was not found guilty of a sexual act with his cellmate, but only of
20  masturbating in front of his cellmate, whom he thought was asleep, and who was also HIV
21  positive.

22       Second, while Plaintiff may have been initially placed on AR 610 status initially because
23  of this incident with his cellmate (whether or not it actually involved sexual activity), he

1  remained on AR 610 status for **13 years**! A jury could reasonably conclude that the incident with

2  his cellmate in 2005 was not the basis for keeping him in ad-seg all those years later. The case

3  note entries themselves question whether AR 610 status should have been applied, and note that

4  Plaintiff remained without significant disciplinary conduct while in ad-seg.

5      Next, the NDOC Defendants contend that Plaintiff remained on AR 610 status because he

6  refused to double cell. The NDOC Defendants' own records do not mention the refusal to double

7  cell as a basis for keeping Plaintiff in ad-seg until August of 2015, **ten years after he had been**

8  **placed in ad-seg**. Moreover, Plaintiff disputes that he "refused" to double cell. Instead, he

9  maintains that NDOC required that he double cell with an inmate of the same custody status and

10 who also had HIV. According to Plaintiff, there were no other inmates with his custody status

11 that also had HIV at ESP; therefore, he could not double cell at ESP. Even if a jury believes that

12 Plaintiff was kept in ad-seg from 2015 to 2018 because he refused to double cell, the jury could

13 conclude that he was kept in ad-seg from 2005 to 2015 based on his HIV-status alone.

14     The NDOC Defendants also argue that there is no evidence that they were personally

15 involved in the decision to keep Plaintiff in ad-seg, and so they are entitled to summary

16 judgment. (ECF No. 120 at 9.)

17     The court may grant summary judgment if the moving party shows "there is no genuine

18 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

19 Civ. P. 56(a). A party asserting that a fact is not genuinely disputed must *cite* to the particular

20 evidence in the record to support that position OR "*show* … that an adverse party cannot produce

21 admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The NDOC Defendants do not

22 cite any evidence to support their position that there is no evidence of their personal

23 participation. Nor do they *show* the court that Plaintiff cannot produce admissible evidence to

support his claim that they violated his rights. It is not enough to simply conclude that Plaintiff cannot support his claim. Defendants should have provided a declaration from each defendant stating they had no involvement or they could have pointed to specific evidence in the record demonstrating they were not involved. They did not meet their burden.

In sum, Plaintiff has raised material factual disputes as to whether Defendants violated the ADA and RA, and as such, the NDOC Defendants' motion for summary judgment should be denied as to the ADA and RA claims.

**B. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

The NDOC Defendants argue that there is no evidence that missing the HIV medications would cause resistance and further injury related to his HIV. After Plaintiff grieved this issue, NDOC put safeguards in place to ensure the process of ordering the medications would occur in a timely manner so the medications would be received as necessary. (Grievance 2006-30-38711, ECF No. 120-6.) They further contend that there is no evidence of actual harm, i.e., resistance to the medication.[2]

Plaintiff's response does not address the Eighth Amendment deliberate indifference to serious medical needs claim against Dzurenda and Dr. Aranas, and therefore, does not create a genuine dispute of material fact as to whether they were deliberately indifferent to his serious medical need with respect to his HIV medications. As such, summary judgment should be granted in favor of Dzurenda and Dr. Aranas as to the Eighth Amendment deliberate indifference to serious medical needs claim.

**C. Eighth Amendment Conditions of Confinement-Water**

The NDOC Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding his conditions of confinement claim concerning the water. Plaintiff filed two grievances on this issue. For the first, grievance 2006-29-86446, Plaintiff did not proceed past the informal level. The second grievance, grievance 200629-96085, skipped at least one level of the grievance process. (*See* ECF Nos. 120-9, 120-10, 120-11.)

---

[2] The declaration of Carol Meyer, APRN, filed in support of Meyer's and Slonim's motion for summary judgment states that Plaintiff's lab numbers remained stable and "ideal" and his regimen was effective. She states that antiretroviral medications often take days to wash out of the system, allowing for some missed days of medications to have no ill effects. Plaintiff expressed his fear of the medications becoming resistant, but would not consider resistance testing or exploring more current therapies. (ECF No. 121-2 ¶¶ 10-11.)

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*. at 1168.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)).

AR 740 contains NDOC's grievance process, and governs the exhaustion of administrative remedies within NDOC. Generally, an inmate must complete three levels of a grievance to exhaust administrative remedies: informal, first and second levels. (ECF Nos. 120-7, 120-8.)

1    Plaintiff's response mentions a multitude of grievances asserting that he was improperly

2    held in administrative segregation under AR 610; however, his response does not point to a

3    grievance that serves to exhaust administrative remedies for Plaintiff's claim against Nash that

4    the water at the facilities in which he was housed were contaminated such that it constituted an

5    unconstitutional condition of his confinement. Therefore, summary judgment should be granted

6    in Nash's favor as to the Eighth Amendment conditions of confinement claim.

7    **D. Eighth Amendment Conditions of Confinement-Long-Term Solitary Confinement**

8    The NDOC Defendants argue Plaintiff has no evidence to support his claim that his time

9    in ad-seg caused him any harm, citing their arguments made in connection with the ADA and

10   RA claims. The NDOC Defendants argued that Plaintiff was in ad-seg because of the sexual

11   misconduct with his cellmate and because he refused to double cell. The court found Plaintiff

12   raised a genuine dispute of material fact as to whether Plaintiff was in ad-seg for 13 years

13   because of the incident with his cellmate or because he refused to double cell. Again, there was

14   no reference to Plaintiff's alleged refusal to double cell until he had already been in ad-seg for 10

15   years, and he remained in ad-seg for 13 years after the incident with his cellmate. Therefore,

16   these arguments do not provide a basis for granting summary judgment in their favor on this

17   claim.

18   **E. Qualified Immunity**

19   In evaluating whether to grant qualified immunity, the "court considers whether (1) the

20   state actor's conduct violated a constitutional right and (2) the right was clearly established at the

21   time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir.

22   2021) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v.*

23   *Callahan*, 555 U.S. 223 (2009)).

The NDOC Defendants argue there was no clearly established law that Defendants violated the constitution when they segregated Plaintiff due to being HIV positive and engaging in high-risk behavior that tended to promote the spread of the disease.

The NDOC Defendants' argument ignores the fact that Plaintiff was kept in solitary confinement for **13 years** after he engaged in the purported high-risk behavior. A jury could reasonably conclude that Defendants discriminated against Plaintiff based on his HIV status when he was kept in solitary confinement 13 years beyond his disciplinary sanction for that misconduct, in violation of the ADA and RA.

In addition, the Supreme Court held in *Hutto v. Finney*, 437 U.S. 678, 685 (1978) that "[c]onfinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." While "punitive isolation 'is not necessarily unconstitutional, [ ] it may be, depending on the duration of the confinement and the conditions thereof.'" *Id*. at 685-86 (citing *Finney v. Hutto,* 410 F.Supp. 251, 275 (E.D. Ark. 1976)). "[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Id*. at 686. As Justice Kennedy pointed out in his concurrence in *Davis v. Ayala,* 576 U.S. 2187 (2015), *over a century ago*, the Supreme Court "recognized that, even for prisoners sentenced to death, solitary confinement bears 'a further terror and peculiar mark of infamy.'" 576 U.S. at 287 (quoting *In re Medley,* 134 U.S. 160, 170 (1890)). He went on to explain that while "prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates," however, "[y]ears on end of near-total isolation exact a terrible price." *Id.* at 289 (citation omitted). Thus, it was clearly established that solitary

1 | confinement under certain conditions and of significant duration can violate the Eighth

2 | Amendment.

3 | A jury could reasonably conclude that keeping Plaintiff in solitary confinement for 13

4 | years beyond the initial misconduct, when he had no other significant disciplinary incidents,

5 | violates the Eighth Amendment. *See also Hardwick v. County of Orange*, 844 F.3d 1112, 1120

6 | (9th Cir. 2017) (citation and quotation mark omitted) (there are some instances where "conduct

7 | is so clearly and obviously wrong that the conduct itself unmistakably 'should have provided

8 | [defendants] with some notice that their alleged conduct violated [the plaintiff's] constitutional

9 | rights.").

10 | Therefore, Defendants are not entitled to qualified immunity.

11 | **F. Settlement Referral**

12 | It is recommended that the remaining claims in this action be referred to the undersigned

13 | to conduct a settlement conference.

14 | **IV. RECOMMENDATION**

15 | IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING**

16 | **IN PART AND DENYING IN PART** the NDOC Defendants' motion for summary judgment

17 | (ECF No. 120) as follows: the motion should be **GRANTED** as to the Eighth Amendment

18 | conditions of confinement claim against Nash concerning the water within NDOC's facilities and

19 | as to the Eighth Amendment deliberate indifference to serious medical needs claim against

20 | Dzurenda and Dr. Aranas; however, the motion should be **DENIED** as to the ADA and RA

21 | claims and as to the Eighth Amendment conditions of confinement claim related to his stay in

22 | administrative segregation for 13 years.

23 |

1    IT IS HEREBY FURTHER RECOMMENDED that the remaining claims proceeding in

2  this action be referred to the undersigned to conduct a settlement conference.

3    The parties should be aware of the following:

4    1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

5  this Report and Recommendation within fourteen days of being served with a copy of the Report

6  and Recommendation. These objections should be titled "Objections to Magistrate Judge's

7  Report and Recommendation" and should be accompanied by points and authorities for

8  consideration by the district judge.

9    2. That this Report and Recommendation is not an appealable order and that any notice of

10  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

11  until entry of judgment by the district court.

12

13  Dated: October 21, 2022

14  _____
    Craig S. Denney
15  United States Magistrate Judge

16

17

18

19

20

21

22

23

18